1        **May 10, 2021**

2              (In open court at 2:26 p.m.)

3              MR. MAHER:  Judge, could I have access to the record?

4              THE COURT:  I'll hear from Mr. Maher who's here on

5        behalf of the Government.

6              MR. MAHER:  Your Honor, I'm flummoxed -- I'm sorry.

7              Your Honor, I'm flummoxed.  I just checked the

8        Marshals' Office, and no one is back there.  Court security

9        gave me an ability to inspect and make sure no one was hurt or

10       something back there.  I couldn't find anybody back there.  I

11       don't know where anybody is.

12             THE COURT:  I assume that they didn't talk to you about

13       this?

14             MR. MAHER:  No.  No, and I left my cell phone across

15       the street in my office right across -- I can go check it.  I

16       haven't talked to anybody about court not appearing today.

17             We obviously had one in custody at 12:30 and I expected

18       to conduct the rest of the hearings today and tomorrow.

19             THE COURT:  Yeah, Mr. Smith, I'm sure is in custody.

20       Travis Weasel may be.  Maybe not the last one on a Social

21       Security deal.

22             MR. MAHER:  Ms. Hoffman is here to conduct the Holley

23       case at 4 o'clock.  I believe Juan Smith, Christopher Plenty

24       Chief, and Travis Weasel are all in custody.

25             THE COURT:  All right.  I guess they're looking for a

1   confrontation.

2        THE CLERK: I'll call Chief Houghtaling.

3        THE COURT: Yeah, let's put him into the -- right into

4   the courtroom here.

5        THE CLERK: Okay. Judge, I'm going to get a phone

6   number.

7        THE COURT: Mr. Turner, the Marshals Service has taken

8   the defendants away.

9        MR. TURNER: That's what I heard. I went in to see my

10   client and they said they're gone. I said, huh?

11        We still do have Marilyn Holley who came up from Texas

12   so -- and Annie is here for that. I could use some time to get

13   ready for that, but we'll be ready to go. But we can certainly

14   do that before 4.

15        THE COURT: Yes, sir, Mr. Maher.

16        MR. MAHER: Your Honor, I'm here all day and I'm also

17   here tomorrow and as long it takes us to figure this mess out,

18   I'm here.

19        THE COURT: They may not bring any prisoners here

20   tomorrow for the meeting -- for the hearings.

21        MR. TURNER: Well, we -- the problem with moving any of

22   these today to tomorrow, we've got a full court dockets in

23   Aberdeen (sic), that's why I'm covering everything here today,

24   but we'll certainly do what we can do to get somebody up here

25   to cover the hearings.

1       MR. MAHER: And I'll stay the night, whatever works for

2 you guys.

3       MR. TURNER: You were planning to stay the night

4 anyway --

5       MR. MAHER: I'll do whatever we need to do.

6       MR. TURNER: -- I'll let everybody back in Aberdeen know

7 so if you want to move those to tomorrow, I'll see if I can --

8 we have someone available to come up and cover those, if that's

9 what you want me to do.

10       THE COURT: Well, we're going to hear from Steve

11 Houghtaling here first.

12       MR. TURNER: Okay.

13       MR. MAHER: Randy, will you tell Annie we might be

14 moving that case up.

15       MR. TURNER: She -- she and I have already talked about

16 it.

17       MR. MAHER: Okay. Thank you.

18       (Discussion off the record. Phone call to Chief Deputy

19 United States Marshal Steve Houghtaling made.)

20       THE CLERK: Steve?

21       CHIEF DEPUTY HOUGHTALING: Yes.

22       THE CLERK: We're in the courtroom right now with the

23 parties present. Judge Kornmann is here.

24       CHIEF DEPUTY HOUGHTALING: Hi, Judge. Good afternoon.

25       THE COURT: Yes, hi.

1    Did you order the marshals to remove the prisoners who
2    were here pursuant to a court order?

3    CHIEF DEPUTY HOUGHTALING:  Your Honor, with the
4    exclusion of our deputy from the courtroom, we cannot safely
5    provide the level of security we need for -- to proceed with
6    court proceedings.  Our policy requires deputy marshals in the
7    courtroom.  And I cannot achieve that without -- without
8    deputies physically being in the courtroom during court
9    proceedings.

10    THE COURT:  You had a deputy here who was fully
11    vaccinated so I don't believe that statement.

12    CHIEF DEPUTY HOUGHTALING:  I don't know his vaccination
13    status for sure, Judge.  All I know is our deputy, I was
14    informed, was told to leave the courtroom.

15    THE COURT:  That's correct.

16    CHIEF DEPUTY HOUGHTALING:  So with that, Judge, we need
17    to be able to have deputies perform the court security
18    function.

19    THE COURT:  You had a deputy here.  And he was in the
20    courtroom and handled the hearing.

21    CHIEF DEPUTY HOUGHTALING:  Are you referring to Mr.
22    Kolb by chance?  Scott Kolb?

23    THE COURT:  I don't know his name, I'm sorry.

24    THE CLERK:  Steve, I believe the reference is to the
25    what I'm going to call as the guard that the Marshals Service

1    uses up here.

2         CHIEF DEPUTY HOUGHTALING:  Yep.  So, Judge, Mr. Kolb is

3    a part-time employee of ours.  You have probably seen him for

4    some time -- he has worked with us for years and years -- as

5    long as I've been in the District.  But he alone does not meet

6    our national policy to staff court proceedings.  We can have

7    the deputy marshal in addition to Mr. Kolb, but we cannot just

8    have Mr. Kolb staffing a court proceeding with no deputy

9    marshals, Your Honor.

10         THE COURT:  Let me ask you this.  Did you make the

11   decision to order them to remove the prisoners?

12         CHIEF DEPUTY HOUGHTALING:  The Marshals Service made

13   the decision, Your Honor, yes.

14         THE COURT:  Who -- who in the Marshals Service did

15   that?

16         CHIEF DEPUTY HOUGHTALING:  It was the U.S. Marshal for

17   the District and I believe in consultation with our

18   headquarters.

19         THE COURT:  Without any consultation with the Court?

20         CHIEF DEPUTY HOUGHTALING:  No, Your Honor.  I did

21   attempt to call Ms. Paepke earlier and she advised you were in

22   court.  But based on -- based on the exclusion, we don't have

23   much of a choice.  We cannot safely move forward with the court

24   proceedings, Judge, at this point.

25         THE COURT:  Are you aware of the fact that the Marshal

1   sent me an email probably two weeks ago inquiring what the

2   policy was and I emailed him back and told him that no

3   employees, including U.S. marshals, who were not vaccinated --

4   fully vaccinated would be in the courtroom or my chambers.

5        CHIEF DEPUTY HOUGHTALING:  I am aware, Judge, yes.  The

6   Marshals Service, I could tell you, has taken a position and

7   responded to Chief Judge Lange this morning that the Marshals

8   Service employees do not have to disclose their vaccination

9   status to third parties, including the Court.

10       That's the position of the Marshals Service at the

11  national level, which was -- which came in response to Judge

12  Lange's letter that he sent last week, Judge, which I think

13  you're familiar with.

14       THE COURT:  Yes.  Well --

15       CHIEF DEPUTY HOUGHTALING:  So our headquarters

16  responded today with the guidance that Marshals Service

17  personnel do not have to give their vaccination status to third

18  parties, including the federal judiciary.

19       THE COURT:  The Administrative Office of the U.S.

20  Courts says that's wrong.  So I guess we have a direct

21  confrontation between the Marshals Service and the

22  Administrative Office, as well as all of the federal judges in

23  South Dakota.

24       CHIEF DEPUTY HOUGHTALING:  Right, Judge.  That's the

25  last thing -- the absolute last thing I would wish for.

CONNIE HECKENLAIBLE, RPR

1        THE COURT:  What was that again?

2        CHIEF DEPUTY HOUGHTALING:  I said which is the absolute

3   last thing I would wish for, Judge.

4        THE COURT:  Well, I'm sure.

5        Well, this is going to come to a head either one way or

6   the other.

7        CHIEF DEPUTY HOUGHTALING:  Yes, sir.

8        THE COURT:  I don't know whether to cite you or the

9   Marshal or both.

10        CHIEF DEPUTY HOUGHTALING:  I would prefer neither.

11        THE COURT:  I'm sure you would.

12        CHIEF DEPUTY HOUGHTALING:  You know, Judge, we have to

13   act in accordance with our policy.  As I indicated, this is not

14   something that -- I don't like this at all.  I don't enjoy it,

15   but we can't not have a deputy marshal in the courtroom for

16   court proceedings. · It flies in the face of our policy.  It

17   doesn't meet the safety requirements, as our ultimate goal is

18   to ensure the safe production of prisoners in the federal

19   courtroom, and that's what we strive to do every -- every

20   hearing and we can't meet that without a deputy marshal in the

21   courtroom based on an exclusion.

22        THE COURT:  Okay.  Well, you proceed at your peril in

23   interfering with court proceedings and that's what you've done.

24        CHIEF DEPUTY HOUGHTALING:  It's not my intention,

25   Judge.

1    THE COURT:  Well, we have counsel here from both sides

2  today ready to go.

3    The first question I'd have is why didn't the Marshal

4  advise me of this when I told him what the policy was at least

5  two weeks ago in writing?

6    CHIEF DEPUTY HOUGHTALING:  Yes, sir.  So the

7  position -- again, the position of the Marshals Service is the

8  vaccination status of our employees is something that should --

9  should remain their business and is -- they are not -- they

10  were advised to not share vaccination status if they do not

11  feel comfortable doing so based on the position of our agency.

12    THE COURT:  My question was, why didn't the Marshal

13  tell me that two weeks ago?

14    CHIEF DEPUTY HOUGHTALING:  Because we just received --

15  we just received the guidance this morning, Judge, on the --

16  based on Judge Lange's letter from last week, we received the

17  guidance this morning from chief of staff, who responded to

18  Judge Lange.

19    So the first I had read of it was this morning when

20  Judge Lange received it, I believe, or shortly thereafter.

21    THE COURT:  Okay.

22    CHIEF DEPUTY HOUGHTALING:  But that being said, I can

23  certainly visit with the Marshal.  Unless there is a -- a

24  change in the position of the Court to facilitate hearings this

25  afternoon with the staff we have available, I don't know -- I

1   don't know where we go from here.

2       THE COURT:  Are you saying that you will not produce

3   the prisoners for the hearings set for tomorrow?

4       CHIEF DEPUTY HOUGHTALING:  Well, the problem, Judge, is

5   the staff that is up there today is the staff that was going

6   to -- were scheduled to staff tomorrow's court as they were

7   going to overnight in Aberdeen.  It's the same staff.  So if

8   they are excluded, then I don't believe -- we don't have any

9   other way of staffing the court, Judge.

10      THE COURT:  Yes or no, are you going to produce the

11  prisoners tomorrow or not?

12      CHIEF DEPUTY HOUGHTALING:  I will have to visit with

13  some other people before I can completely answer that, but I

14  can tell you, based on where I believe we are at now with

15  staffing, that the two deputies that are in Aberdeen today are

16  the two that are scheduled to staff court tomorrow morning.

17  But if I send other deputies, I don't think that solves the

18  problem, Judge.

19      THE COURT:  It does if they've been fully vaccinated.

20  They can twiddle their thumbs in Sioux Falls if they want to, I

21  don't care, but they're not coming into the courtroom here or

22  into my chambers.

23      CHIEF DEPUTY HOUGHTALING:  Well, we circle back then to

24  the underlying vaccination status question.  The Marshals

25  Service has taken the position that Marshals Service employees

1   do not have to provide their vaccination status to the court.

2   So I think we're -- we end up in this same stalemate. If there

3   are other -- even if there are other deputies and they don't

4   reveal their vaccination status, then we are right back to

5   square one.

6       THE COURT: You're saying that you have the authority

7   to decide whether an employee is going to disclose that? How

8   does that become your right as the employer?

9       CHIEF DEPUTY HOUGHTALING: No, Your Honor. I believe

10  I'm saying that the individual has the right whether they want

11  to disclose that. In fact, I don't know which of our employees

12  have been vaccinated or not vaccinated.

13      THE COURT: Okay. I'd like some kind of a definitive

14  answer as to whether or not you're going to produce the

15  prisoners tomorrow so we can have these hearings, which have

16  been previously ordered by the Court.

17      CHIEF DEPUTY HOUGHTALING: Yes, Your Honor.

18      THE COURT: You're tying up a lot of lawyers as well --

19  as well as the court personnel and keeping people in custody

20  longer than they should be probably.

21      All right. Well, I will deal with it. Thank you for

22  calling.

23      CHIEF DEPUTY HOUGHTALING: Yes, sir. I provided Barb

24  with my cell phone number if you need to visit and I will be in

25  touch with any updates that I have as I receive them.

CONNIE HECKENLAIBLE, RPR

1    THE COURT:  Yeah, you can call my office any time, of

2 course.

3    CHIEF DEPUTY HOUGHTALING:  Yes, sir.  Thanks, Judge.

4    THE COURT:  All right.  Thank you.

5    CHIEF DEPUTY HOUGHTALING:  Thank you.

6    (Phone call ended.)

7    THE COURT:  Well, you may have some extra business, Mr.

8 Maher.

9    MR. MAHER:  I understand.  I knew, as an officer of the

10 court and a member of federal bar, that when you asked about my

11 vaccination status if I was going to be appearing here that I

12 was in a unique situation and quickly decided on April 7th to

13 inform the Court that I was vaccinated so I didn't run into a

14 log jam.

15    After we did the 12:30 hearing today, I thought it was

16 going to be clear sailing and we were going to handle all of

17 the court.  I'm kind of flummoxed right now and I'm not

18 understanding how we can't get some of these people into court

19 and resolve their cases with their attorneys, including Mr.

20 Reed, who I believe drove here from Sioux Falls.

21    THE COURT:  Yes, that's true.  It's, if nothing else,

22 highly discourteous.  Contempt of court, probably.

23    As I stated in the conversation with Mr. Houghtaling,

24 the Administrative Office of the United States Court said there

25 is no basis for any Marshals Service employee to refuse to

CONNIE HECKENLAIBLE, RPR

1    disclose whether or not they have been vaccinated.  Now, what

2    the consequences of that might be is an entirely different

3    matter.

4              SKYLER GALLIMORE:  Excuse me, Judge.

5              One possibility, Judge, Barb and I just discussed is we

6    could put the defendants in the video conference room

7    downstairs.

8              THE COURT:  You can do what, I'm sorry?

9              SKYLER GALLIMORE:  We can put the defendants in the

10   video conference room downstairs and they could appear by video

11   from somewhere else in the courthouse.

12             THE COURT:  Well, even if they're -- who are they in

13   custody with then?

14             SKYLER GALLIMORE:  Oh, the marshals, they just wouldn't

15   be in the courtroom.  They would also be with the defendant

16   downstairs.

17             THE COURT:  Yeah, okay.  Well, I wouldn't have any

18   objection to that.  I'm not trying to make things difficult for

19   anybody.  But I'm going to make sure that the courts run the

20   courts, not the Marshals Service or some bureaucrat from

21   Washington, D.C.

22             I have not talked with Judge Lange about this or Judge

23   Piersol or Judge Schreier or Judge Viken.  But we have a

24   conference call set for tomorrow night and I am absolutely

25   positive that all the judges are going to agree that this is

1 the way it's going to work. If you're not vaccinated, you

2 don't come in the courtroom and you don't come into chambers.

3      Whether we can do that or not, if they want to find out

4 from the Court of Appeals, we'll give them a map to St. Louis.

5      MR. MAHER:  Your Honor, I'm just trying to figure out

6 what cases we can work through right now.  I see both attorneys

7 are here on the 4 o'clock case.  I don't know if Marilyn Holley

8 is present.

9      MR. TURNER:  She is.  I need a little time to work with

10 her.  I wasn't expecting to have that until 4.

11      I will tell you that she traveled with someone and the

12 person she traveled with has been vaccinated; my client has not

13 yet.  But Texas is a little different than South Dakota.

14      THE COURT:  Yes, for sure.  Well, not much though.

15      MR. TURNER:  But I want the Court to be aware of that.

16 I mean, she had no idea that -- I mean, I don't know if she

17 could have gotten it by now or not.

18      THE CLERK:  We're going to get Steve Houghtaling back

19 on the phone.

20      And Judge, I did ask him if he would be agreeable to

21 having the marshals bring the defendants down to third floor to

22 the video conference room.

23      THE COURT:  Right.

24      THE CLERK:  And he said yes, he thought so.  So we'll

25 get him back on the phone.

1          THE COURT:  Okay.

2          (Phone call to Chief Deputy United States Marshal Steve

3     Houghtaling made.)

4          SKYLER GALLIMORE:  Are you with us, Steve?

5          CHIEF DEPUTY HOUGHTALING:  Yes, I'm with you.

6          THE COURT:  Skyler, why don't you tell him what you

7     have proposed.

8          SKYLER GALLIMORE:  Yes, sir.

9          So we have video conference capability in the third

10    floor of the courthouse and so we were thinking we could have

11    the defendants with the marshals down in another room far away

12    from the courtroom and then we could appear -- have the

13    defendants appear by video --

14         THE COURT:  With their consent.

15         SKYLER GALLIMORE:  Are you still with us, Steve?

16         CHIEF DEPUTY HOUGHTALING:  I'm sorry.  Can you hear me?

17         SKYLER GALLIMORE:  No, we couldn't hear you.  If you

18    had responded, we could not hear you.

19         CHIEF DEPUTY HOUGHTALING:  Oh, okay.  I apologize.

20         Is the question whether the Marshals Service can

21    accommodate a third floor appearance?

22         THE COURT:  Yes.

23         CHIEF DEPUTY HOUGHTALING:  Yes, I believe that is a

24    workable solution.

25         THE COURT:  Not a permanent one, but a partial solution

CONNIE HECKENLAIBLE, RPR

1    at this time.

2        CHIEF DEPUTY HOUGHTALING:  Yes, Judge, I agree.

3        THE COURT:  I mean, this is going to be a major

4    confrontation.  So stand by for a ram.  And if the Court of

5    Appeals says I'm wrong, it wouldn't be the first time.

6        CHIEF DEPUTY HOUGHTALING:  That's right, Judge.  I

7    recall often you saying that you're not wrong until the Eighth

8    Circuit tells you you're wrong.

9        THE COURT:  That's right.

10       CHIEF DEPUTY HOUGHTALING:  But, I -- Judge, I just want

11   to be so clear, this is not something I want or the agency

12   wants.  I mean, we're just between a rock and a hard place.  I

13   do not want confrontation.  In fact, I want the opposite of

14   that.  I want -- would prefer the relationship that we have

15   enjoyed over the years instead of this.

16       THE COURT:  I understand.  And I'm not looking for a

17   confrontation either, of course, but that's what I have here.

18       As I told you, the Administrative Office of the United

19   States Courts -- they don't run the courts, of course, but

20   these are bureaucrats in Washington, D.C. -- have told the

21   District Judges that the Marshals Service has no authority to

22   order or to allow employees to not disclose whether or not they

23   have been fully vaccinated.  The Administrative Office says

24   employees have no right to decline to answer such a question.

25   So that's their opinion, which is completely contrary

1  apparently to somebody from the Marshals Service.

2      CHIEF DEPUTY HOUGHTALING:  Yes, sir.  Yep.  And my -- I

3  maybe have misspoken so I don't want to be held to this, but my

4  understanding of the AOUSC guidance is that applies to court

5  staff members, Judge, members of the judicial branch, but not

6  to the Marshals Service or the Department of Justice as a

7  whole -- U.S. Attorney's Office, and otherwise.

8      THE COURT:  I don't believe that's correct.  I have the

9  document some place.

10     THE CLERK:  Steve, is it possible to get the defendants

11  for this afternoon back to the federal building?

12     CHIEF DEPUTY HOUGHTALING:  Yes, I can make some phone

13  calls as soon as I hang up.

14     THE CLERK:  Okay.  Thank you.

15     CHIEF DEPUTY HOUGHTALING:  Okay.  Does that -- is that

16  the plan then to get them there and proceed with court on the

17  third floor?

18     THE COURT:  Yes, as a temporary basis.

19     CHIEF DEPUTY HOUGHTALING:  Yes, Judge.  Okay.  Thank

20  you, I will --

21     THE COURT:  Thank you.

22     CHIEF DEPUTY HOUGHTALING:  -- make some calls right

23  now.  Thanks.

24

25

1          THE COURT:  Tim, you should make sure that -- is Dennis

2    the Acting U.S. Attorney, I think, isn't he?

3          MR. MAHER:  Yes.

4          THE COURT:  That he's aware of what's going on here.

5    I'm sure he will be.

6          MR. MAHER:  I will inform him today as soon as I get to

7    my phone across the street.

8          MR. TURNER:  I can certainly let you borrow a phone

9    between here.

10         (Conclusion of Hearing.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25